UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | Crim. No. 07-211 (EGS) |
| | ) | |
| MICHELE WONG, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RENEWED MOTION UNDER THE SPEEDY TRIAL ACT
TO EXCLUDE TIME GIVEN THE COMPLEX NATURE OF THE CASE AND
TO EXCLUDE TIME TO OBTAIN EVIDENCE FROM FOREIGN COUNTRIES**

**COMES NOW** the United States of America, by and through the undersigned attorney, and hereby renews its motion under 18 U.S.C. §§ 3161(h)(8)(A), 3161(h)(8)(B)(i) and (ii), and 3161(h)(9) of the Speedy Trial Act to exclude time based on the complex nature of the case and to exclude time to permit the United States to obtain evidence from foreign nations. In support thereof, the government states the following:

BACKGROUND

1. On July 26, 2007, a federal grand jury in the District of Columbia indicted Zhenli Ye Gon and charged him with conspiring to aid and abet the manufacture of five kilograms or more of methamphetamine, knowing or intending that it would be imported into the United States, in violation of 21 U.S.C. Sections 959 and 963, and 18 U.S.C. Section 2.

2. On August 21, 2007, a federal grand jury in the District of Columbia indicted Michele Wong and charged her with conspiring to commit money laundering and nine counts of engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18

1

U.S.C. Sections 1956(h), 1957 and 2.

    3.   Ye Gon is a citizen of China and is believed to be a citizen of Mexico.  He immigrated to Mexico, eventually married, and with his wife and young children he resided in Mexico City.  In the 1990's Ye Gon started a pharmaceutical company in Mexico City, Mexico known as Unimed Pharmaceutical.  He began buying ephedrine and pseudoephedrine, precursor chemicals commonly used in the manufacture of methamphetamine, from a company in Inner Mongolia, which is part of the People's Republic of China (hereafter, China).  The company shipped its product to Unimed over the ocean, and on some occasions the cargo went through ports in South Korea before making its way to Mexico.  On at least one occasion a shipment appears to have gone to El Salvador, before making its way on to Mexico.

    4.   By 2006, Unimed consisted of a modest office and warehouse where Ye Gon stored and sold penicillin and steroids, and a state of the art manufacturing facility where Ye Gon processed various substances, including ephedrine and pseudoephedrine.  This state of the art facility was lavish and housed very expensive equipment which was purchased from all over the world, most particularly from Germany.  In conducting financial transactions, Ye Gon engaged in banking in China, Europe, Mexico, and the United States.

    5.   In December 2006, law enforcement authorities in Mexico seized and sampled a shipment destined for Unimed which came into a port in Mexico.  The samples were sent to a crime lab in Mexico where chemists in the lab analyzed the samples.  In 2007, law enforcement authorities in Mexico searched Ye Gon's residence and found approximately 205 million dollars in United States currency, along with other currencies from around the world worth approximately two million dollars.  Law enforcement authorities in Mexico also searched his

office, warehouse, and state of the art facility, locating various financial and shipping documents showing his business and financial activities in China, Europe, Mexico, and the United States. Law enforcement authorities seized evidence from his home, office, warehouse, and manufacturing facility. Law enforcement authorities in China and the United States also investigated Ye Gon in 2007.

6. Michele Wong is a citizen of the United States and may also be a citizen of Hong Kong, China. She met Ye Gon while working as a hostess at the Mirage Casino in Las Vegas, Nevada on or about October, 2004. The Mirage fired her in January 2005, and shortly thereafter she became romantically involved with Ye Gon. She has not been employed since January, 2005.

7. Ye Gon gave Wong at least $1.5 million over the course of their romantic relationship. She used the money Ye Gon gave her to purchase a $1.1 million home in Las Vegas, two automobiles, jewelry, and other items. During their relationship, Wong gave birth to a child and claims that Ye Gon is the father.

8. In May, 2006, Ye Gon told Wong that he was being forced to launder money in Las Vegas by a Mexican organized crime group since March, 2006. The group wanted Ye Gon to store large sums of cash in his home and gamble with the money in Las Vegas, in addition to purchasing high value items in an attempt to launder the funds. Ye Gon told Wong that he knew the money was from narcotics traffickers and that it was dirty.

9. From May 2006 on, Wong continued to spend the money Ye Gon continued to give her, despite knowing its source. She used over $850,000 to pay off the remainder of her mortgage in July, 2006, after purchasing the home only a few months before.

10. The United States is working with officials in Mexico, China and Germany to obtain evidence located in those countries. There are numerous financial transactions that occurred in each country involving Ye Gon and Wong. Official requests to these are countries are pending in order for the countries to formally share evidence the foreign authorities have located. Once the U.S. obtains the evidence, it will have to translate the documents into English.

## APPLICABLE LAW

11. Under the Speedy Trial Act, 18 U.S.C. §3161 et seq., Wong's trial must commence relatively quickly, usually within seventy days. 18 U.S.C. §3161(c)(1). The Speedy Trial Act, however, excludes certain periods of time from this computation. First, the Court may toll the seventy day period by granting a "continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." §3161(h)(8)(A). In determining whether to grant a continuance, a factor the Court must consider is "whether the case is so unusual or complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself" within the prescribed time limit. §3161(h)(8)(B)(ii). Second, the Court may order "[a]ny period of delay, not to exceed one year," upon application of a party and a "finding by a preponderance of the evidence that an official request [to a foreign country] has been made for evidence of any such offense and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country." §3161(h)(9).

12. The United States has been working with a number of governments to gather

evidence in this matter. It has received a number of documents from foreign governments in an informal manner, and is in the process of sharing some of these documents with defense counsel. The United States is also in the process of gathering this material through the formal process and the prosecution has submitted a formal request to the Government of Mexico. The evidence requested from Mexico will help to establish the underlying specified unlawful activity that is the basis for the money laundering charges in this matter, and includes evidence of illegal importations of precursor chemicals into Mexico and financial documents and records. The U.S. has also made formal requests for evidence to the governments of Hong Kong, S.A.R. and Germany. To date, only the Hong Kong authorities have provided the information requested via a treaty. German authorities are in the process of obtaining the evidence the U.S. has requested. In addition to obtaining the necessary evidence, the U.S. will have to translate a large volume of documents into English, which will take some time.

A. Time Should Be Excluded Under §3161(h)(8)(A) and (h)(8)(B)(i) and (ii) of the Speedy Trial Act Because Of The Complex Nature Of The Case

13. On October 30, 2007, this Court granted the Government's motion to exclude time from the speedy trial computation in part because of the amount of evidence located in various countries. The government respectfully renews its request to this Court to grant a continuance because of the complex nature of the case and because not all of the treaty requests to obtain evidence have been fulfilled. It is the government's position that Ye Gon was distributing ephedrine and pseudoephedrine to persons in Mexico who were involved in the manufacture of methamphetamine exported to the United States, and laundering proceeds he received from the distribution of ephedrine and pseudoephedrine with the help of Wong. Ye Gon acquired large quantities of ephedrine and pseudoephedrine from a company in Inner Mongolia, products that

5

were shipped from China, often through ports in South Korea, to ports in Mexico. Various financial transactions went hand in hand with these shipments. Thus, the case is complex for the following reasons. First, substantial evidence of the suspected offenses is located in foreign countries, including remote areas such as Inner Mongolia. Second, the Government may have to travel outside of the United States to interview witnesses and the parties may have to depose witnesses who are located outside of the United States. Third, because the case involves the extraterritorial application of United States law, as well as involving the laws of China and Mexico, the case may present novel questions of fact or law. Fourth, much of the documentary evidence in this case, including banking, financial, and shipping documents, is in Chinese, Korean, German or Spanish. It will take considerable time to translate these documents once they are officially received, even though the Government has begun reviewing these documents. Some of the financial transactions, such as wire transfers of funds to Michele Wong, were sent from various financial institutions in Mexico, including transfers from casa de cambios, and also need to be translated and are voluminous.

    14. Accordingly, the government respectfully submits that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limit established by the Speedy Trial Act. See <u>United States v. Kamer</u>, 781 F.2d 1380 (9th Cir. 1986) (holding "ends of justice" continuance for additional trial preparation was supported by complex case with numerous overseas documents, mostly in Dutch language, and many foreign witnesses); <u>United States v. Brooks, et al.</u>, 697 F.2d 517 (3d Cir. 1982) (affirming district court's grant of continuance for complex case alleging drug manufacturing and distributing conspiracy involving nine people, with four counts of substantive drug offenses involving various members

of conspiracy, where not all defendants had secured counsel, and where discovery had not been completed at time continuance was granted); United States v. Strong, 608 F. Supp. 188 (E.D. Pa. 1985) (concluding the failure to grant an "ends of justice" delay would deny the government needed evidence and time necessary for effective preparation in a complex case that sought evidence from Hong Kong and Singapore).

15.  This Court has twice granted the United States' motion to exclude time under the Speedy Trial Act in Ye Gon's case due to the complex nature of the case and the need to obtain evidence from foreign governments.  In this case, as one of the elements of the crime, the U.S. must prove the proceeds of the crime are from a specified unlawful activity.  Given the complex nature of the specified unlawful activity that generated the proceeds Wong laundered, the Government will need more time to adequately prepare its case against Wong.

### B.  Time Should Be Excluded Under §3161(h)(9) of the Speedy Trial Act To Obtain Evidence From Foreign Countries

16.  The government respectfully moves the Court to delay the setting of any trial date under 18 U.S.C. §3161(h)(9) based on the government's request for evidence located in foreign countries, including China, Germany, Mexico, and elsewhere.

17.  In computing the time within which the trial must commence, the government respectfully requests that the Court order that the period of time from the filing of this motion for at least another 90 days therefrom be excluded pursuant to 18 U.S.C. §3161(h)(9).  See United States v. Serna, 630 F. Supp. 779 (S.D.N.Y. 1986) (finding the government was entitled to continued exclusion of time not to exceed one year under 18 U.S.C.A. § 3161(h)(9) while the government made a diligent and good-faith effort to obtain evidence gathered by Spanish police); United States v. Strong, 608 F. Supp. 188 (E.D. Pa. 1985)(concluding the failure to grant

an ends of justice delay would deny the government needed evidence and time necessary for effective preparation in a complex case that sought evidence from Hong Kong and Singapore).

18. The government is working to obtain the requested evidence as expeditiously as possible. Because it may take longer than 90 days to obtain and translate the requested material, it is possible that the Government will renew this motion, should the Court decide to grant this request, for at least another 90 days.

**WHEREFORE**, for the foregoing reasons, the United States respectfully asks the Court to grant this motion, and to certify this case as complex. The Government requests that the Court exclude a reasonable period of time from the Speedy trial calculations in this case.

RESPECTFULLY SUBMITTED,

RICHARD WEBER, CHIEF
ASSET FORFEITURE AND
MONEY LAUNDERING SECTION

KENNETH A. BLANCO, CHIEF
NARCOTICS AND DANGEROUS DRUG SECTION

_____/s/_____
Paul W. Laymon
Wanda Dixon
Robert Stapleton
Mary Mogavero
Trial Attorneys
Criminal Division, Department of Justice
1400 New York Avenue, NW
Washington, DC 20530
(202) 514-1263